ARTHUR BALLARD, collector of taxes, &c., petitioner,

*v.*

PARK PLACE LAND COMPANY, respondent.

[Decided April 9th, 1940.]

Mr. *Louis Josephson,* for the accountant.

Mr. *Ellis L. Pierson,* for the exceptant.

BUCHANAN, V. C.

Certain premises in the City of Trenton owned by Park Place Land Company were sold to the city of Trenton on March 2d, 1937, for unpaid taxes. On July 19th, 1938, under and pursuant to the provisions of *R. S. 1937, App. A:4-1* (originally *Pamph. L. 1933, Special Session, chapter 6, page 1304*) Ballard, the tax collector of the City of Trenton, filed petition in this court and obtained order appointing him receiver of the rents and income of the said property.

On February 14th, 1940, as the result of petition filed herein by the owner, the receiver filed an amended accounting

by him as said receiver of the rents and income from said premises. To this amended account exceptions were filed by the aforesaid owner of the premises; and the matter has been duly brought on for hearing on the exceptions.

The receiver, by his amended account, charges himself with a total of rents received aggregating $3,190, and prays allowance for a few disbursements aggregating $115.76, and for the balance, ($3,074.24), paid by him to the City of Trenton on account of the latter's tax lien.

The exceptions filed by the owner substantially amount to this,—that the receiver should have collected rents amounting to $6,560 instead of only $3,190, and should be therefore surcharged with the sum of $3,370.

There is no substantial dispute, if indeed any, as to the facts. It appears that at the time of the appointment of the receiver to collect the rents, the premises were occupied by a tenant, Grace Fields, under a lease from the owner, at the weekly rent of $80. On or about February 6th, 1940, the aforesaid tenant of the premises paid to the City of Trenton the sum of $17,591 in redemption or purchase of the tax title certificate, which sum was accepted by the city as the full amount due to the city over and above the $3,074.24 turned over to the city by the rent receiver aforesaid; and the receiver was discharged from further duty except the duty to account.

The owner makes no contention that the receiver was under any duty to collect rents accruing after the date of such redemption or purchase. The contention is simply that the receiver should have collected rent of $80 a week during the period of 82 weeks between the date of his appointment, July 19th, 1938, and the date of such receipt by the city of the full amount due to it.

It further appears that, in the middle of 1939, the tenant having fallen into arrears for a period of about five months, the rent receiver commenced eviction proceedings in the city district court and obtained a warrant of removal. The order however allowed the tenant one month in which to remove before being evicted. Admittedly the rent receiver made no objection to the city district court against this provision for

a month's delay. Before the month expired, moneys were deposited and negotiations commenced for the redemption of the tax title certificate as aforesaid; and no rents were collected by the rent receiver from and after July 25th, 1939.

It is quite apparent from the testimony of the receiver (and from the argument of his counsel), that he did not conceive of himself, as such receiver, as owing any duty or obligation to the owner of the premises, but felt that the only thing he need concern himself about was obtaining for the city the full amount due the city on the tax title certificate. This is also the position taken and the argument made by his counsel in contending against any surcharge and in seeking the allowance of the account as filed and the discharge of the receiver from all further liability.

In that view this court cannot concur. Mr. Ballard as receiver of the rents, under the appointment by this court as aforesaid, was an entirely separate and different person in the eyes of the law from the Mr. Ballard as tax collector of the City of Trenton. As such rent receiver he was a fiduciary for both parties in interest, and accountable not only to the City of Trenton, but also to the owner of the premises, for his acts and conduct as such fiduciary. His duty was to protect the interests of both,—not merely the interest of the city alone.

Obviously the owner had at least as great an interest as the city, that the rents should be collected from the tenant as they accrued. Under the order appointing the receiver, the owner was restrained from any collection of any rents or any acts which would interfere with the collection of rents by the receiver. If the receiver did not collect the rents, the owner could not collect them. The receiver was under the duty of acting, with regard to the collection of the accruing rents, as an ordinarily reasonable and prudent man would have acted if the premises had been his own. If the rents fell in arrears, it was his duty, both to the owner and to the city, to take all reasonable measures to accomplish the collection thereof. This duty he failed to perform.

It is further to be noted that not all of this omission by the receiver to perform his duty was merely negligence. It

appears by his own testimony that for a part of the period involved, it was an actual refusal on the part of the receiver to comply with the requests of the owner that he should proceed to collect these arrearages of rent.

This omission and refusal to use reasonable efforts to collect the rents was a breach of his fiduciary duty to the owner, —a breach of trust. It was a legal injury to the owner, and the receiver is liable to the owner for such damage as has been sustained by the owner as the result thereof.

In the effort to contravene this conclusion, the receiver's counsel relies (1) on the case of *Brunner* v. *Morrison,* *123 N. J. Eq. 224, 196 Atl. Rep. 716;* and (2) on certain language of the statute. The cited case is not in point. That case holds two things,—first, that it was error for the court below to determine *on a summary hearing,* issues of fact on the question of the liability of the rent receiver to the owner. In the instant case there has been a full and complete hearing on testimony and evidence taken in open court. The other holding was that the owner could not set off or charge against the municipality the amount of any loss sustained by the owner by reason of the receiver's negligent failure to collect rent. In the present case the owner is making no claim whatever against, or affecting, the City of Trenton; the claim is only against the receiver for the latter's breach of duty.

As to (2), it is contended on behalf of the receiver that under the express language of the statute, (*supra*) the receiver is under no duty whatever to the owner of the premises. Reliance is placed upon the statutory provisions that the tax collector of the municipality may petition this court to be appointed receiver of the rents and income of real property subject to delinquent taxes "for the purpose of collecting and satisfying out of such rents and income the delinquent taxes," &c.; and "Such receiver * * * shall be appointed only for the purpose of collecting and satisfying the delinquent taxes, penalties, interest, and costs and expenses as aforesaid."

It is not perceived how this language, either expressly or by natural implication, precludes or absolves the receiver from being under any duty or responsibility to the owner. The "purpose" or *reason for his being appointed receiver* of the

rents and income is only that the city may thereby be enabled to collect and receive from the receiver the delinquent taxes; just as a receiver of rents and income is appointed, in a mortgage foreclosure suit, for the purpose or reason that the mortgagee may thereby be enabled to collect and receive from such receiver, the amounts due such mortgagee on its mortgage lien or debt.

It is evident from the other provisions of the same statutory section in question, that the legislature had in mind that in most or many instances, the property would be subject to mortgages. It seems clear that the meaning of the statutory language is no more than its natural and ordinary meaning,—to wit, that the only reason or purpose for the rent receiver being appointed under this statute, is in order that the city may thereby be enabled to collect the taxes. He is not to be appointed for the purpose of benefiting a mortgagee; but only for the purpose of benefiting the municipality; and (by section *App. A.:4-3*), as soon as the delinquent taxes have been fully paid, he is required to apply for his discharge. The statute simply means that a rent receiver is only to be appointed in order that the taxes may thereby be collected.

The fact that the only reason or purpose for a rent receiver being appointed under this statute is in aid of the collection of taxes, has, however, nothing to do with the fiduciary duties of the rent receiver *when he has been appointed* rent receiver. He is then, as such rent receiver, under the same duties and responsibilities to all parties in interest, including the owner, as any other rent receiver. The order appointing him expresses nothing to the contrary; and neither does the statute. In the absence of any such clear expression it is not to be inferred that the legislature intended that he should be free from the usual duties and responsibilities of a rent receiver,—that he should be at liberty, so far as any responsibility to the owner is concerned, to collect rents or not as he chooses.

The municipality is under no responsibility to the owner for the receiver's failure to use reasonable efforts to collect the rents,—*Brunner* v. *Morrison, supra,*—and it cannot be

supposed that the legislature intended that the receiver also should be under no such responsibility,—that the owner should have no redress whatever for the damage caused by such negligence, while being prevented from himself pursuing and enforcing the tenant's liability while the receiver continued in office. Indeed if the legislature had so intended and had expressly so provided, there would be grave doubt, to say the least, of the constitutionality of such an enactment.

It is further argued on behalf of the receiver that his failure and refusal to proceed with the endeavor to collect the rents was justified because of the fact (which is established by the evidence) that he was advised by the city counsel that he was under no obligation or duty to the owner so to proceed; and that he is therefore excused from any liability to which otherwise he might be subject. This argument is also deemed without force. Whatever might be the situation in this respect if the advice had been given him by independent counsel, the fact is that in the instant case he did not seek the advice of independent counsel but relied on the advice of the city counsel,—counsel for another party in interest. The responsibility was his, not the city's; and there was no more reason for him to act on the advice of the city or the city's legal representative than on that of the owner or its representative. It would seem that it would be obvious to the ordinary, reasonable man that for him to proceed with the eviction proceedings as insisted upon by the owner, could not have involved him in any liability either to the city or to the owner or to the tenant, whereas by failing to act as requested by the owner he ran the risk of incurring liability to the owner. It would seem that a reasonably prudent man would have had no doubt but that he should proceed; but if he did have any such doubt, then it was his duty to apply to this court, whose officer he was, for advice and instruction. This he did not do, nor attempt to do. Furthermore, if he believed that he should not proceed against the tenant for the reason that the city had received all of its claim, it was his duty forthwith to report to this court and obtain his discharge so that the owner would be under no further disability and could act for itself. This also he did not do.

That he acted on the advice of counsel for another interested party is held in nowise to excuse him from liability to the owner for the damage resulting to the owner for his negligent and intentional omissions to perform his duty.

It remains however to consider what is the amount of that damage for which he is liable. The owner contends that the receiver is liable for the full amount of the uncollected rents, $3,370, together with interest on the several weekly installments computed from the respective dates on which they fell due, at the rate of 8 per cent. (which was the rate of interest which continued to accrue on the city's tax lien). It is doubted however that this is legally,—or at least equitably,—true under the situation here presented.

It seems clear that even under the present proofs, it is established that the owner has suffered some damage,—to the extent, at least, of the interest which accrued on the tax lien which would not have accrued if the rents had been collected and turned over to the city. It is also found as a fact that if the receiver had proceeded against the tenant he would have collected the rents. The evidence shows that this is probable; and under the circumstances the burden is on the receiver to establish the contrary, and he has made no effort to do so. Indeed the fact that the tenant paid the $17,000 to the city for the tax title seems practically conclusive on this point.

That the receiver is liable as to any amount which has become irretrievably lost to the fiduciary's beneficiary as the result of his breach of duty,—as in the *Union Bank Case, 37 N. J. Eq. 420*,—is clear. A trustee is also liable for the amount of trust assets which have, by his negligence, passed from the trust fund to other parties,—notwithstanding the beneficiary might be able to recover such assets (or some of them) or the value thereof from the other parties. *Tannenbaum v. Seacoast Trust Co., 16 N. J. Mis. R. 234, 198 Atl. Rep. 855; aff'd, *125 N. J. Eq. 360, 5 Atl. Rep. (2d) 778.* A case of irretrievable loss would be presented if the receiver had negligently or intentionally kept the premises unoccupied and unproductive of rent, but that is not the situation here. The tenant's liability to the owner has not been

lost or extinguished, but still exists, and there is at least a reasonable possibility that the owner may be able to obtain from the tenant the payment of the amount of that liability, or some of it. 'Neither is the situation analogous to that in the *Tannenbaum Case*. There, trust assets had passed out of the possession of the trustee into the possession of third parties. Here the trust asset,—the chose in action due from the tenant,—has passed back into the possession or control of the owner.

It is deemed equitable to require the owner to endeavor to recover from the tenant on that chose in action, and to prove inability so to do, before entering a decree fixing the amount of the receiver's liability. The fact that the receiver was required to serve without compensation· is· another consideration tending to this conclusion.

The hearing will therefore be continued, without day, to enable the owner so to proceed, and to bring on the matter for further hearing thereafter.